UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>D-1 YOGESH K. PANCHOLI,<br><br>Defendant.<br>_____/ | Case: 2:19-cr-20639<br>Judge: Parker, Linda V.<br>MJ: Stafford, Elizabeth A.<br>Filed: 09-24-2019 At 04:07 PM<br>INDI USA V. SEALED MATTER (DA)<br><br>VIO:  18 U.S.C. § 1349<br>18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 1957<br>18 U.S.C. § 982 |

## INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1.  The Medicare program was a federal health care program providing benefits to persons who were 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Medicare was a "health care benefit program,"

as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4.      National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B, which included home visits, in the state of Michigan. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor (ZPIC). The ZPIC is the contractor charged with investigating fraud, waste and abuse. Cahaba was replaced by AdvanceMed in May 2015.

5.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all

the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as an NPI). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the NPI assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

9.  Medicare only covered services that were both medically necessary and rendered.

10. Medicare only covered home health services, if:

    a.  the Medicare beneficiary is under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

    b.  the Medicare beneficiary needs, and a doctor certifies that the beneficiary needs, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

    c.  the home health agency must be approved by Medicare (Medicare-certified); and

    d.  the Medicare beneficiary is homebound, and a doctor certifies that the Medicare beneficiary is homebound.

11. Medicare rules allow home health agencies to submit requests for advance payments ("RAPs") at the start of a patient's care. Providers can receive up to 60% of the total claim amount, pursuant to a RAP request, at the beginning of an episode of care. At the conclusion of the episode of care, a final claim must be submitted in order for the provider to receive the remainder of the Medicare reimbursement for each claim.

## The Related Home Health Agency

12. Shring Home Health Care, Inc. ("Shring") was, at all pertinent times hereto, a Michigan Corporation doing business at 23801 5 Mile Road, Suite 105B, Livonia, Michigan 48154. At all pertinent times, Shring was enrolled as a participating Medicare provider and submitted claims to Medicare.

13. Shring was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients.

## The Defendant and Related Entities

14. YOGESH K. PANCHOLI is a resident of Oakland County. PANCHOLI was, at all pertinent times hereto, the controller, operator and true owner of Shring, which conducted business throughout the Eastern District of Michigan. PANCHOLI assumed control and ownership of Shring in or around July 2018.

15. In or around May 2017, PANCHOLI was placed on the Department of Health and Human Services, Office of Inspector General's exclusion list and rendered ineligible to participate in the Medicare program as a provider or otherwise receive any funds from Medicare. PANCHOLI is, and has been at all pertinent times, excluded from Medicare and all other Federal health care programs.

16. Medco Staffing, Inc., ("Medco") is a Michigan corporation formed in or around November, 2018. At all times pertinent hereto, Medco was owned and/or controlled by PANCHOLI and others known and unknown to the Grand Jury and operated for the benefit of PANCHOLI and others known and unknown to the Grand Jury.

17. University Research and Technical Staffing Corp. ("University Research") is a Michigan corporation that was formed in or around December 2014. At all times pertinent hereto, University Research was owned and/or controlled by PANCHOLI and others known and unknown to the Grand Jury and operated for the benefit to PANCHOLI and others known and unknown to the Grand Jury.

## Count 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

**D-1 YOGESH K. PANCHOLI**

18. Paragraphs 1 through 17 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

19. From in or around July 2018 and continuing through December 2018, the exact dates being unknown to the Grand Jury, in Wayne County and Oakland County, in the Eastern District of Michigan, and elsewhere, the defendant, YOGESH

K. PANCHOLI, did willfully and knowingly combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    (a) to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services; and

    (b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

## Purpose of the Conspiracy

20. It was a purpose of the conspiracy for defendant YOGESH K. PANCHOLI and others to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare for home health services on behalf of Shring for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as billed; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators.

## Manner and Means

21. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

22. On or about December 29, 2014, PANCHOLI and/or others acting at his direction opened Chase Bank account x6808 on behalf of University Research.

23. In or around July 2018, PANCHOLI and others arranged for, and funded the purchase of Shring through a straw owner who purchased Shring for the benefit of PANCHOLI and his co-conspirators.

24. On or about July 16, 2018, PANCHOLI and/or others acting at his direction took control of Chase Bank account x3242 on behalf of Shring.

20. On or about July 16, 2018, PANCHOLI and others falsely certified to Medicare that Shring would comply with all Medicare rules and regulations, and federal laws, including that it would not knowingly present or cause to be presented false and fraudulent claims for payment by Medicare.

21. PANCHOLI and others concealed PANCHOLI's involvement with Shring by submitting or causing the submission of false and fraudulent enrollment materials to Medicare that failed to disclose the ownership interest and/or managing control of PANCHOLI.

22. PANCHOLI and others utilized the names and HICNs of Medicare beneficiaries and NPIs of physicians in order to submit false and fraudulent claims for home health services purportedly prescribed by a licensed physician that were never provided to Medicare beneficiaries.

23. On or about November 8, 2018, PANCHOLI and/or others working at his direction opened Chase Bank account x4075 on behalf of Medco.

24. PANCHOLI and others submitted and caused Shring to submit false and fraudulent claims through interstate wire transmissions to Medicare for home health services purportedly rendered to Medicare beneficiaries, when in truth and fact, such home health services were not medically necessary and were not provided.

25. PANCHOLI and others submitted and caused the submission of false and fraudulent claims through interstate wire transmissions to Medicare in an

9

amount exceeding approximately $2.7 million for services that were medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

26.  As a result of these false and fraudulent claims, Medicare made payments to Shring in an amount in excess of $2.7 million that PANCHOLI and others diverted for their own use and benefit.

All in violation of Title 18, United States Code, Section 1349.

## Counts 2-3
## Health Care Fraud
## (18 U.S.C. §§ 1347 and 2)

### D-1 YOGESH K. PANCHOLI

27.  Paragraphs 1 through 17, and 20 through 26 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

28.  From in or around July 2018 and continuing through in or around December 2018, in the Eastern District of Michigan and elsewhere, the defendant, YOGESH K. PANCHOLI, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare by submitting or causing the

submission of false and fraudulent claims to Medicare, for home health services that were not provided and/or were medically unnecessary.

### Purpose of the Scheme and Artifice

29. The Grand Jury realleges and incorporates by reference Paragraphs 1 through 17 and 20 through 28 of this Indictment as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

30. The Grand Jury realleges and incorporates by reference Paragraphs 21 through 26 of this Indictment as a description of the scheme and artifice.

### Executions of the Scheme and Artifice

31. On or about the dates specified below, in the Eastern District of Michigan and elsewhere, YOGESH K. PANCHOLI, aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, submitted or caused to be submitted the following false and fraudulent claims to Medicare for home health services that were not provided and/or medically unnecessary in an attempt to execute, and in execution of the scheme as described in Paragraphs 1 through 17 and 20 through 26 with each execution set forth below forming a separate count:

| Count | Medicare Beneficiary | Approximate Date of Claim Submission | Claimed Date of Service | Description of Items Billed | Amount Paid by Medicare |
|---|---|---|---|---|---|
| 2 | M.K. | November 13, 2018 | November 11, 2018 | Home health services | $3,001.18 |
| 3 | D.F. | November 15, 2018 | November 12, 2018 | Home health services | $3,199.93 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

### Counts 4-5
### Money Laundering
### (18 U.S.C. §§ 1957 and 2)

### D-1 YOGESH K. PANCHOLI

32. Paragraphs 1 through 17, and 20 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

33. On or about the dates set forth below, in the Eastern District of Michigan and elsewhere, PANCHOLI, and/or others acting at his direction, did knowingly engage and attempt to engage in the following monetary transactions by, though, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, health care fraud:

| Count | Defendant | Date | Transaction |
|---|---|---|---|
| 4 | YOGESH K. PANCHOLI | December 3, 2018 | Check for $56,250 from Shring Chase Bank Account x3242 to Medco Citizens Bank Account x4075 |
| 5 | YOGESH K. PANCHOLI | December 9, 2018 | Check for $95,000 from Medco Citizens Bank account x4075 to University Research Chase Bank account x6808 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## Forfeiture Allegations

**(18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461)**

33.    The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461.

34.    As a result of the violations of 18 U.S.C. §§1349 and/or 1347, as set forth in this Indictment, YOGESH K. PANCHOLI shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461.

35. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

36. <u>Money Judgment</u>: A sum of money equal to at least $2.7 million in United States currency, or such amount as is proved at trial in this matter, representing the total amount of gross proceeds obtained as a result defendant's violations, as alleged in this Indictment.

THIS IS A TRUE BILL.                                s/Grand Jury Foreperson
                                                                       Grand Jury Foreperson

MATTHEW SCHNEIDER
United States Attorney

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9583
wayne.pratt@usdoj.gov


s/MALISA DUBAL
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
(202) 660-2001
malisa.dubal@usdoj.gov


s/PATRICK J. SUTER
PATRICK J. SUTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort St., Suite 2001
Detroit, MI  48226
(202) 679-1430
patrick.suter2@usdoj.gov

Date:  9/24/2019

| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case:2:19-cr-20639<br>Judge: Parker, Linda V.<br>MJ: Stafford, Elizabeth A.<br>Filed: 09-24-2019 At 04:07 PM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to cor

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: PJS |

**Case Title:** USA v. Yogesh Pancholi

**County where offense occurred:** Oakland

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Yogesh K. Pancholi | 18 U.S.C. § 1349, 18 U.S.C. § 1347, 18 U.S.C. § 2, 18 U.S.C. § 1957, 18 U.S.C. § 982 | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 24, 2019
Date

Patrick Suter, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 679-1430
Fax:    (313) 226 - 0816
E-Mail address: Patrick.Suter2@usdoj.gov
Attorney Bar #: CA 242494

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.