UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                   Criminal Case No. 19-20639
                                                     Honorable Linda V. Parker

YOGESH K. PANCHOLI

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE (ECF NO. 30)

On September 24, 2019, Yogesh K. Pancholi ("Defendant") was charged with one count of conspiracy to commit healthcare fraud and wire fraud in violation of 18 U.S.C. § 1349, two counts of healthcare fraud in violation of 18 U.S.C. § 1347, and two counts of money laundering in violation of 18 U.S.C. § 1957. (ECF No. 1.) Presently before this Court is Defendant's motion *in limine* seeking to exclude evidence of an agreement between Defendant, the United States, and the State of Michigan to settle a False Claims Act civil suit in 2017. (ECF No. 30.) The motion has been fully briefed. (ECF Nos. 32, 33.) For the reasons that follow, the Court is granting Defendant's motion.

**I. Background**

In April 2017, Defendant entered into a settlement agreement and signed an affidavit whereby he agreed to a five-year voluntary exclusion from the Medicare and Medicaid programs.  (ECF No. 33 at Pg ID 117-134.)  Defendant's settlement was pursuant to a False Claims Act civil suit filed against him and other defendants for paying kickbacks to physicians who referred patients to healthcare entities affiliated with his employer, Dr. Babubhai Rathod.  (*See id.* at Pg ID 133.)

In July 2018, during his exclusion from Medicare and Medicaid, Defendant allegedly funded the purchase of Shring Home Health Care, Inc., a participating Medicare provider, through a straw owner who purchased it for the benefit of Defendant and other unnamed co-conspirators.  (ECF No. 1 at Pg ID 5, 8.)  The Government alleges that through Shring, Defendant and his co-conspirators submitted false and fraudulent claims to Medicare for home health services in an amount exceeding $2.7 million, when such services were not medically necessary, not eligible for Medicare reimbursement, or not provided at all.  (*Id.* at Pg ID 9-10.)  Moreover, the Government asserts that Defendant engaged in money laundering activities to shield the fraudulent source of this income.  (*Id.* at Pg ID 12-13.)

In this case, the Government filed a Notice of Intent to Offer Evidence, in which it seeks to introduce the 2017 settlement agreement related to Defendant's

prior inappropriate kickbacks, which ultimately resulted in his exclusion from the Medicare program.  (ECF No. 28.)  The Government argues that evidence of Defendant's exclusion from Medicare, by way of the settlement agreement, is *res gestae* evidence that is "inextricably intertwined" with the charged offense of healthcare fraud.  (*Id.* at Pg ID 91.)  Alternatively, the Government argues that the evidence is admissible under Federal Rules of Evidence 404(b) as evidence of intent, knowledge, and absence of mistake in making fraudulent claims to Medicare.  (ECF No. 32 at Pg ID 92-93.)  Moreover, the Government claims that the evidence is more probative than potentially prejudicial.  (*Id.* at Pg ID 93.)

In response, Defendant filed the pending motion *in limine* to exclude evidence of the settlement agreement.  (ECF No. 30.)  Defendant argues that this evidence is not *res gestae* and is more prejudicial than probative of his intent, lack of mistake in billing, or knowledge of Medicare eligibility rules.  (ECF No. 33 at 112-13.)  Defendant agrees, however, that the Government is entitled to show that he was excluded from participating in Medicare when the events leading to the indictment occurred.  (*Id.* at Pg ID 113.)  He offers to allow the Government to present the jury a Notice of Exclusion or an Exclusion List maintained by Medicare, provided this evidence does not contain any information beyond the fact that he was excluded from the program.  (*Id.*)  In the alternative, Defendant offers

to allow a statement to be read to the jury or a jury instruction regarding his exclusion.  (*Id.*)

## II. Applicable Law & Analysis

"A motion *in limine* is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984), *aff'd*, 469 U.S. 38 (1984)).  A district court's ruling on such a motion is "a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 469 U.S. at 1239).  District courts have "broad discretion" over matters involving the admissibility of evidence at trial. *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (quotation marks and citation omitted).  "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce*, 469 U.S. at 41 n. 4.

In analyzing admissibility, a court must consider whether the evidence is relevant.  Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R.

Evid. 401.  In contrast, irrelevant evidence is not admissible.  Fed. R. Evid. 402.

However, a "court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403.

> **A.**     ***Res gestae***

The Government argues that the settlement agreement is admissible as *res*

*gestae* evidence because Defendant's exclusion from the Medicare program is

"part and parcel" of his later scheme to defraud Medicare.  (ECF No. 28 at Pg ID

92.)

*Res gestae* evidence is background evidence of a defendant's other acts that

are "inextricably intertwined with the charged offense[.]"  *United States v. Hardy*,

228 F.3d 745, 748 (6th Cir. 2000) (citations omitted).  "Proper [*res gestae*]

evidence has a causal, temporal, or spatial connection with the charged offense."

*Id.*  Such background evidence does not fall under the purview of Federal Rule of

Evidence 404(b) for prior bad acts evidence because it does not constitute a wholly

separate act — it typically arises from the same event, forms an integral part of a

witness's testimony, or is directly probative of, completes the story of, or is a

prelude to the charged offense.  *Id.*  However, the principle of *res gestae* "does not

allow a party to evade 404(b) by introducing any and all other act evidence."

*United States v. Clay*, 667 F.3d 689, 697-98 (6th Cir. 2012) (citation omitted).  As

such, courts must place "severe limitations as to 'temporal proximity, causal

relationship, or spatial connections'" to avoid rendering Rule 404(b)'s protections

meaningless.  *Id.* at 698 (quoting *Hardy*, 228 F.3d at 749).

In this case, the settlement agreement establishes that Defendant was

excluded from Medicare when he began engaging in the fraudulent activities

through Shring.  Defendant's exclusion itself can be considered a "prelude" that

"completes the story" of the charged offense because it explains why Defendant

purchased Shring through a straw owner and concealed his involvement with the

company.  *See, e.g.*, *United States v. Adams*, 722 F.3d 788, 812 (6th Cir. 2013);

(ECF No. 1 at Pg ID 9.)  As such, the Medicare exclusion by itself would be

admissible as *res gestae* evidence because Defendant's exclusion caused him to

conceal his involvement in Shring, which is an important element of the story of

the charged offense.

However, the settlement agreement sweeps more broadly than just

Defendant's exclusion from Medicare.  It also establishes that Defendant engaged

in kickbacks for referrals, which constitute a separate offense.  *See, e.g.*, 42 U.S.C.

§ 1320a-7b(b) (Anti-Kickback Statute).  This prior behavior is not *res gestae*

evidence and falls under the purview of Federal Rule of Evidence 404(b).  While

the Government argues that the settlement agreement is evidence of Defendant's

knowledge of Medicare rules, his lack of mistake in billing, and evidence of his motive and intent to conceal his association with Shring (*see* ECF No. 32 at Pg ID 107), it does not offer any argument that links the kickback scheme itself in a way that is relevant or admissible to Defendant's later scheme of billing fraudulent claims to Medicare.

The Government does not allege that the same people, aside from Defendant, were involved in both schemes. *See, e.g.*, *Hardy*, 228 F.3d at 749-50. (noting that there was not an "identity of parties" between the people involved in the prior offense and those involved in the charged offense when concluding that the prior acts were not background evidence). With no connection between the people involved, and with Medicare kickbacks and billing fraud being separate offenses, the kickbacks do not help establish the "inception" of the crimes alleged here or show a causal relationship between the first act (kickbacks) and the second act (fraud). *Id.* at 749. Moreover, the two acts occurred over a year apart and at different locations, failing the *res gestae* requirements for temporal or spatial proximity. *Id.* at 748.

With nothing linking the kickbacks during Defendant's prior employment and the fraudulent claims through Shring, the two acts appear to be separate and distinct, "not essential for providing a coherent and intelligible description of the charged offense" as is necessary for evidence to be characterized as *res gestae*.

*Clay*, 667 F.3d at 698.  In a similar case considering the admission of prior kickback evidence to prove healthcare fraud, the District Court for the Eastern District of Kentucky stated that "[t]hese payments . . . provide a classic example of a 'crime, wrong, or other act' under Rule 404(b)" and found that the government's argument that the kickback payments were probative of the defendant's intent, knowledge, and plan to defraud "require[d] a logical leap the [c]ourt [wa]s unwilling to take." *United States v. Walters*, 226 F. Supp. 3d 821, 824-25 (E.D. Ky. 2016).  The court explained: "Inappropriate payment agreements do not, by default, indicate intent to defraud." *Id.* at 825.

Thus, while the settlement agreement establishes Defendant's exclusion, which is relevant *res gestae* evidence, it also establishes that Defendant engaged in a prior unrelated act, which falls under the purview of Rule 404(b).  Given that the substance of the settlement agreement is focused on the kickback issue, and that "severe limitations" must be imposed on *res gestae* evidence to avoid evasion of Rule 404(b)'s protections, *see Hardy*, 228 F.3d at 749, the Court concludes that the settlement agreement is only admissible if it falls under one of Rule 404(b)'s exceptions.

### B.    Federal Rule of Evidence 404(b)

The Government contends that the settlement agreement is admissible under Rule 404(b) as evidence of Defendant's intent, knowledge, and absence of mistake

in the charged offense and that each element of the three-prong test for determining admissibility under 404(b) has been satisfied.  (ECF No. 28 at Pg ID 92-3.)  Rule 404(b) prohibits evidence of other crimes, wrongs, or acts committed by a person to prove that person's character or to show that the person acted in accordance with that character.  Fed. R. Evid. 404(b)(1).  However, the rule expressly permits the use of such evidence for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

The Sixth Circuit has developed a three-step test for determining the admissibility of other acts evidence under Rule 404(b).  *United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002) (citing *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992) (en banc)).  First, the court determines whether there is sufficient evidence that the other act occurred.  *Id.* at 720 (citing *Gessa*, 971 F.2d at 1261).  If so, the court next determines "whether the evidence of the other act is probative of a material issue other than character."  *Id.* (internal quotations marks and citations omitted).  As to this step:

> Evidence of other acts is probative of a material issue
> other than character if (1) the evidence is offered for an
> admissible purpose, (2) the purpose for which the
> evidence is offered is "in issue," and (3) the evidence is
> probative with regard to the purpose for which it is
> offered.

*Adams*, 722 F.3d at 810 (alterations, additional quotation marks and citation omitted). If the evidence is probative of a material issue other than character, the court finally must decide whether its probative value is substantially outweighed by its potential prejudice. *Haywood*, 280 F.3d at 720 (citation omitted). The Court will discuss these three steps in relation to this case.

As to the first step, there is sufficient evidence that the other act, paying kickbacks, occurred. In the settlement agreement and the affidavit Defendant signed in tandem with the agreement, he explicitly acknowledged and accepted responsibility for engaging in the act of illegal remunerations. (*See* ECF No. 33.)

Turning to the second step, the Government contends that the settlement agreement is offered for an admissible purpose: to establish Defendant's intent, knowledge, and absence of mistake in the Medicare fraud scheme. (ECF No. 28 at Pg ID 92). Specifically, the Government argues that the agreement shows that Defendant knew he was excluded from submitting claims from Medicare, that he knew Medicare rules and regulations and was not under a mistaken belief that the claims were legal, and that he intentionally concealed his involvement with Shring. (ECF No. 28 at Pg ID 93; ECF No. 32 at Pg ID 107.) At this step of the analysis, the Court determines at face value whether the Government's purported reason for introducing the evidence is valid. *See, e.g.*, *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003); *United States v. Haywood*, 280 F.3d 715, 720-21 (6th Cir.

2002).  Because the express language of Rule 404(b) allows other act evidence to be introduced to prove intent, knowledge, or absence of mistake, *see* Fed. R. Evid. 404(b)(2), the first part of the second-step analysis is satisfied.

The next inquiry at the second step is whether the purpose for which the evidence is offered is "in issue" in the case.  *Jenkins*, 345 F.3d at 937.  An element is "in issue" for purposes of 404(b) admissibility if "the defendant has placed, or conceivably will place, [it] in issue," or if it is among the statutory elements the government must prove.  *United States v. Ray*, 549 F. App'x 428, 432 (6th Cir. 2013) (quoting *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996)) (emphasis omitted).  Defendant is charged, in part, with violating 18 U.S.C. § 1347.  To convict Defendant under this statute, the Government must prove that he defrauded Medicare "knowingly and willfully[.]"  *See United States v. English*, 785 F.3d 1052, 1055-56 (6th Cir. 2015).   The Government must prove Defendant's "specific intent to deceive or defraud."  *United States v. White*, 492 F.3d 380, 394 (6th Cir. 2007) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)).  Thus, knowledge and intent—at the very least—are "at issue."

The final part of the second-step analysis is to determine whether the evidence is probative of the purpose for which it is offered.  *Jenkins*, 345 F.3d at 937.  To support its argument for admission of the settlement agreement, the Government cites *United States v. De Oleo*, 697 F.3d 338 (6th Cir. 2012).  In *De*

*Olea*, the Sixth Circuit held that evidence of the defendant's prior involvement with clinics that engaged in Medicare fraud was admissible 404(b) evidence in his Medicare fraud case because it demonstrated his and his co-conspirators' familiarity with fraudulent practices. *United States v. De Oleo*, 697 F.3d. 338, 343-44 (6th Cir. 2012). The Sixth Circuit has reached the same conclusion in other Medicare fraud cases. *See, e.g.*, *United States v. Manzano*, 793 Fed. Appx. 360, 366 (6th Cir. 2019) (citing *De Oleo*, 697 F.3d at 343) ("We have already recognized that close-in-time fraud at other medical facilities may show the defendant's intent to participate in the indicted healthcare fraud.")

However, Defendant's case differs from these cases because the prior bad act here was paying inappropriate kickbacks for referrals, *not* prior fraudulent Medicare billing—the crime of which he is currently charged. "Inappropriate payment arrangements do not, by default, indicate intent to defraud. It is certainly possible for an individual or entity to make illicit payments in order to obtain what would otherwise constitute legitimate business." *Walters*, 226 F. Supp. 3d at 825; *see also United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007) ("we cannot hold that [paying kickbacks] alone is sufficient to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare."). Rather than permitting a reasonable inference that Defendant had knowledge of fraudulent Medicare billing practices or that he made willful

attempts to defraud the program through submitting false statements and claims, the kickback evidence shows that Defendant simply paid other physicians for referrals and does not establish that the business was otherwise fraudulent.

Where prior bad acts do not have some connection to the charge for which a defendant is indicted—for example, where the crime is the same with a similar *modus operandi*, or where the same people are involved in both crimes—courts generally deny admission of other act evidence to show intent or knowledge. *See, e.g.*, *Adams*, 772 F.3d 788 at 812-18 (holding that evidence of the defendants' prior vote-buying was permissible in their vote-buying case, but evidence of their prior drug dealing was not); *see also Walters*, 226 F. Supp. 3d at 825-26 (holding that evidence of the defendants' prior fraudulent billing of Medicare for unnecessary procedures was admissible in their Medicare fraud case, but evidence of their prior kickback scheme was not).  Because the settlement agreement does little to show Defendant's knowledge of Medicare billing practices or his intent to defraud Medicare through submitting fraudulent claims, the Court concludes that the evidence is not probative of Defendant's knowledge or intent with regard to the crimes for which he is charged in this case.

Even if probative, however, the evidence would still fail the final element of the 404(b) admissibility test, which weighs its probative value against its prejudicial effect.  If evidence is substantially more prejudicial than probative, it

should be excluded. *Adams*, 722 F.3d at 810. To weigh the probative versus prejudicial effect of evidence, a court should consider the evidentiary alternatives available to the prosecution. *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018) (citing *Old Chief v. United States*, 519 U.S. 172, 184 (1997)). If there are less prejudicial alternatives available, the probative value of the prejudicial piece of evidence should be discounted. *Old Chief*, 519 U.S. at 183.

In this case, the fact that Defendant engaged in other misconduct surrounding Medicare would certainly prejudice him in this Medicare fraud trial. This evidence runs the risk of inducing the jury to engage in "propensity" reasoning—i.e., that Defendant generally engages in shady healthcare practices— especially because the prior act also pertains to Medicare. *See United States v. Asher*, 910 F.3d 854, 862 (6th Cir. 2018) ("This risk [of propensity reasoning] is heightened when the prior act is much like the charged conduct.")

Furthermore, Defendant offers to stipulate to the fact that he was excluded from the Medicare program when the alleged acts underlying the current charges occurred. (ECF No. 33 at Pg ID 3.) When a defendant agrees to stipulate to his legal status resulting from a "judgment rendered wholly independently of the concrete events of later criminal behavior charged against him," the evidence of how he obtained that legal status loses much of its probative value in contrast with its prejudicial effect. *Old Chief*, 519 U.S. at 190.

Simply showing the jury that Defendant was excluded from the program without divulging details as to why he was excluded will permit the jury to reasonably infer that Defendant is familiar with Medicare rules and regulations, along with providing a sufficient background to explain why Defendant concealed his involvement with Shring.  As such, given the evidentiary alternatives available to the Government, the prejudicial effect of the settlement agreement outweighs its probative value.

Accordingly,

**IT IS ORDERED** that Defendant's Motion *in Limine* (ECF No. 30) to exclude evidence is **GRANTED.**

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 15, 2022