UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                      Criminal Case No. 19-20639

v.                                Honorable Linda V. Parker

YOGESH K. PANCHOLI,

       Defendant.

_____/

## OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO EXCLUDE EMAILS AND (2) GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PRIOR BAD ACT EVIDENCE

Defendant currently stands charged by way of a Superseding Indictment with one count of conspiracy to commit health care fraud and wire fraud, one count of health care fraud, one count of money laundering, two counts of aggravated identity theft, and one count of witness tampering. (ECF No. 38.) A jury trial is scheduled for September 13, 2023. The matter is presently before the Court on Defendant's motion to preclude the Government from introducing certain emails into evidence at trial (ECF No. 72) and Defendant's motion in limine to exclude prior bad act evidence (ECF No. 78). The Government opposes both motions. (ECF Nos. 74, 79.)

## Motion to Exclude Emails

### Background

The emails in question relate to one of the Government's witnesses, Sai Pagudala, a native of India.[1]  (*See* ECF No. 72-1 at PageID 456-471.)  According to the Superseding Indictment, when Pagudala returned to India from the United States to obtain a renewal of her United States H-1B visa, Defendant sent six emails to various United States government agencies, including the United States Department of State, alleging that she had engaged in "immigration/visa fraud" and that her visa should not be renewed.

The six emails in fact consist of two original emails—an initial report and then a follow-up—which were sent to different email addresses on different dates between February 6 and March 9, 2022.  (*Id.*)  All of the emails are from the address of nationalhomecare@protonmail.com and are signed by "Khuram Baig." (*Id.* at PageID 456-71.)  National Home Care is Pagudala's former employer and Baig is her former boss.

---

[1] There is an additional email that Defendant moved to exclude: an email from Federal Office of Police in Switzerland to an employee at the United States Department of Justice.  (*See* ECF No. 72-1 at Pg ID 475.)  At the final pretrial conference on August 30, however, the Government indicated that it will not offer this email as evidence.  Defendant's motion to exclude this email is therefore moot.

Claiming that Defendant sent the emails for the purpose of making Pagudala unavailable to testify against him at trial, the Government is charging Defendant with witness tampering.

## Argument

Defendant seeks to preclude the Government from introducing the emails, arguing that they cannot be authenticated. Defendant maintains that the emails, which were sent from a generic email address and do not contain Defendant's name or any other identifying information, cannot be authenticated absent sufficient admissible evidence that they were authored by him. The Government responds that the emails can be authenticated through testimony that they are the emails received by the Government in February and March 2022, or alternatively that they are self-authenticating as business records and/or certified records generated by an electronic process. According to the Government, authentication does not require proof that the emails were in fact authored and/or sent by Defendant.

## Applicable Law & Analysis

Records must be properly authenticated to be introduced as evidence at trial. Fed. R. Evid. 901. Authentication requires the proponent of the record to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The burden of proof for authentication is slight."

*Gregg v. Ohio Dep't of Youth Servs.*, 661 F. Supp. 2d 842, 852 (S.D. Ohio 2009) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005)); *see also Martin v. Performance Boat Brockerage.com, LLC*, 973 F. Supp. 2d 820, 825 (W.D. Tenn. 2013) (citing *Gregg*).  A record's authenticity can be established through direct or circumstantial evidence.  *See United States v. Cosgrove*, 637 F.3d 646, 658 (6th Cir. 2011).

The Sixth Circuit has held that "[i]t is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."  *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (citing *United States v. Sliker*, 751 F.2d 477, 499-500 (2d Cir. 1984)). "[T]he ultimate resolution of authenticity is a question for the jury."  *Id*. at 247 (quoting *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992)).

Rule 901 offers a non-exhaustive list of ways to authenticate a record, such as "testimony of a witness with knowledge . . . that an item is what it is claimed to be."  Fed. R. Evid. 901(b)(1).  With respect to emails, one district court has observed:

> Despite the prevalence of email communication in this day and age, case law in the Sixth Circuit regarding how Rule 901 relates to the authentication of emails is sparse.  A number of courts, however, have suggested the key factor in the Rule 901(b) list when it comes to email authentication is Rule 901(b)(4).  That provision explains that records may be authenticated by the introduction of testimony regarding their

4

> unique characteristics: i.e., the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). In fact, Rule 901(b)(4) is "one of the most frequently used to authenticate email and other electronic records." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546 (D. Md. 2007).

*United States v. Bertram*, 259 F. Supp. 3d 638, 640 (E.D. Ky. 2017). The court cited several cases where emails were found properly authenticated under Rule 901(b)(4). *Id.* at 640-41 (citing *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Safavian*, 435 F. Supp. 2d 36 (D.C. Cir. 2006); *United States v. Fluker*, 698 F.3d 988, 998-1000 (7th Cir. 2012); *United States v. Kilpatrick*, No. 10-cv-20403, 2012 WL 3236727 (E.D. Mich. Aug. 7, 2012)). "[T]he key consideration . . . is not simply whether the witness on the stand was a sender or recipient of the email, but whether the testifying witness can speak to the email's unique characteristics, contents, and appearance." *Id*. at 641.

Under Federal Rule of Evidence 902, certain evidence is self-authenticating, "requiring no extrinsic evidence of authenticity . . . to be admitted[.]" For example, "[t]he original or a copy of a domestic record that meets the requirements of [Federal Rule of Evidence] 803(6)(A)-(C)" for "business records" are self-authenticating if shown by proper certification and notice is provided. Fed. R. Evid. 902(11). Another example is "[a] record generated by an electronic process or system that produces an accurate result," as shown by proper certification, provided proper notice is given. Fed. R. Evid. 902(13).

5

Through testimony "of [a] witness with knowledge . . . that the [emails are] what the [Government] claims [they are,]" Fed. R. Evid. 901(b)(1), and by distinctive characteristics such as "appearance, contents, substance, [or] internal patterns . . . taken in conjunction with circumstances[,]" Fed. R. Evid. 901(b)(4), the Government is able to show that the emails in question are those received by the State Department in February and March 2022.  The Government cites no authority for its assertion that it need not prove more to properly authenticate the emails—that is, that they were authored or sent by Defendant.  (*See* ECF No. PageID 479.)  Caselaw suggests that this is a requirement.  *See, e*.g.*, Fluker*, 698 F.3d at 999 (citing Mark D. Robbins, *Evidence at the Electronic Frontier: Introducing E-Mail at Trial in Commercial Litig.*, 29 Rutgers Comput. & Tech. L.J. 219, 226 (2003); 2 John W. Strong et al., McCormick on Evid. 219(a) (5th ed. 1989)) (indicating that authentication of emails is impossible without evidence, direct or circumstantial, that specific individual authored or sent the emails); *United States v. Bertram*, 259 F. Supp. 3d 638, 641-42 (E.D. Ky. 2017) (finding emails admissible because witness provided circumstantial evidence to tie the emails to particular individuals); *Jimena v. UBS AG Bank, Inc.*, No. 1:07-cv-00367, 2011 WL 2551413, at *3-6 (E.D. Calif. June 27, 2011).  In any event, the Government proffered evidence at the final pretrial conference from which a jury could find that Defendant authored the emails.

6

Specifically, State Department employee Erinn Fischer will testify that the emails were received by the agency in February and March 2022. Fischer is in the department that would have received and reviewed the emails and, in fact, she was involved in investigating the allegations in the emails. Further, a tip was sent to government officials at the same time as these emails which were purportedly sent from the same person and contained generally the same allegations. The Government identified the IP address from which the tip was sent and a witness will testify that they came from Defendant. Baig will testify that he did not send the six emails in question, that he stopped communicating with Pagudala long before the emails were sent, and that he did not have access to a lot of the information shared in the emails. This circumstantial evidence is sufficient for the Court to preliminary authenticate the emails.[2]

Fischer also attests that the emails satisfy the requirements to be considered business records. (*See* ECF No. 72-1 at PageID 473). As indicated, "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C)" for "business records" are self-authenticating if shown by proper certification and notice is provided. Fed. R. Evid. 902(11). Fischer's certification tracks the

---

[2] The emails are not being offered for the truth of the matter asserted therein and thus they do not need to also satisfy a hearsay exception.

requirements of a business record under Rule 803(6).  (ECF No. 72-1 at PageID 473.)

The Government cites caselaw stating that "certificates from a records custodian that 'track the language of 803(6) nearly word for word' render the records self-authenticating."  *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (quoting *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991)); *see also United States v. Daneshvar*, 925 F.3d 766, (6th Cir. 2019) ("[A]n email can qualify as an admissible record of a regularly conducted business activity as long as the proponent satisfies the requirements of Rule 803(6)").  However, it cannot be that a party satisfies the requirements of Rule 803(6) simply by stating that they are met.  In other words, the court has some obligation to confirm that such assertions are accurate.

A record must satisfy four requirements to be considered a business record admissible under Rule 803(6):

> (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009).  Satisfaction of these requirements establishes the foundation for reliability on which the admission of such records is based.  *See id.*

"The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information."  *United States v. Cecil*, 615 F.3d 678, 690 (6th Cir. 2010) (quoting *United States v. McIntyre*, 997 F.2d 687, 699 (10th Cir. 1993)).  "If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails."  *United States v. Penn*, 568 F. Supp. 3d 1135, 1150 (D. Colo. 2021) (quoting *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008)); *see also Cecil*, 615 F.3d at 690-91 (concluding that officer's report was not a business record as it was based on statements by someone without a business duty to report the information).  For that reason, emails kept by a business or organization that contain information from an individual not acting in the regular course of the business or organization—that is, without a business duty or compulsion to provide accurate information—are not business records.  *See Penn*, 568 F. Supp. 3d at 1140-42 (analogizing Facebook chats found unauthenticated under Rule 902(11)).

Assuming Defendant was the author of the emails in question, he did not have a business duty to report the information in those emails.  The emails,

therefore, do not qualify as a business record.  Accordingly, they are not self-authenticating under Rule 902(11).

The Government also claims the emails are self-authenticating under Rule 901(b)(9), relying on Fischer's attestation that the records were generated by an electronic process or system that produces an accurate result.  (ECF No. 72-1 at PageID 473.)  The rule was "designed for situations in which the accuracy of a result is dependent upon a process or system which produces it."  Fed. R. Evid. 901(b)(9) advisory committee's note to 1972 amendment.  As the advisory committee notes indicate, the computer is a familiar instance where Rule 901(b)(9) applies.  *Id.*; *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 549 (D. Md. 2007) (providing that Rule 901(b)(9) is "particularly useful in authenticating electronic evidence stored in or generated by computers").  Thus, the Government also can authenticate the emails through the testimony of an individual who is familiar with the accuracy of the process or system used to generate the emails (i.e., the State Department's computer system) and who can testify as to how emails received by the State Department are stored and were retrieved for purposes of this trial.  *See United States v. Kilpatrick*, No. 2012 WL 3236727, at *3 (E.D. Mich. Aug. 7, 2012) (authentication of text messages through Rule 901(b)(9) through testimony of the records custodian, explaining how the text messages are stored).

For these reasons, the Court is denying Defendant's motion to exclude the emails based on lack of authentication.

## Motion to Exclude Prior Bad Acts Evidence

### Background

The Government has filed a notice of its intent to offer evidence that Defendant previously used falsified signatures to his own benefit to establish his identity as the individual who falsified the signatures underlying the aggravated identity theft offenses charged in Counts 6 and 7 of the Superseding Indictment. (ECF No. 75.)  Counts 6 and 7 of the Superseding Indictment allege that Defendant used the signatures of two individuals, without their knowledge and consent, on two documents (i.e., a Stock Purchase Agreement and Verification of Contracting of Services) to conceal his ownership and control of Shring Home Health Care, Inc.—the entity through which the alleged Medicare fraud was committed.  (*See* ECF No. 38 at PageID 179.)

According to the Government, Defendant previously submitted letters to the United States Center for Immigration Services ("USCIS") in support of his visa application, which were purportedly signed by Snehali Suthar as President of University Research and Technical Staffing ("URTS") and claiming that Defendant was an employee of URTS.  (*Id.* at PageID 486.)  The Government asserts that "[t]he misuse of former employee signatures to falsify documents is

11

identical to the conduct alleged in Counts 6 and 7."  (ECF No. 75 at Pg ID 487.)  In other words, the Government argues, the prior acts establish "that Defendant has a *modus operandi* characteristic to his bad acts" which will help identify him as the person who forged the signatures on the documents at issue in Counts 6 and 7 of the Superseding Indictment."  (*Id.*)

### Argument

Defendant seeks to exclude the evidence concerning the alleged falsification of Suthar's signature on the USCIS letter, arguing that there is insufficient evidence that he committed this prior act.  (ECF No. 78.)  While Suthar can testify that she did not sign the letter, Defendant maintains that the Government cannot show that he was responsible for the forgery.  (*Id.* at PageID 500.)

The Government argues in response that it has sufficient evidence from which a jury could reasonably find that Defendant in fact committed the prior bad act.  (ECF No. 79 at PageID 503.)  Specifically, Suthar's testimony that she was not the President of URTS, did not employ Defendant, and neither authored, signed, nor authorized anyone else to sign the USCIS letter.  (*Id.* at PageID 504.)  Further, Suthar will testify that Defendant employed her and had access to documents containing her signature.  (*Id.*)  The Government also points out that the letter served only one purpose and benefitted only one person: Defendant in his bid for a work visa.  (*Id.*)

### Applicable Law & Analysis

Pursuant to Federal Rule of Evidence 404(b)(1), prior bad act evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence is admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  This list is not exhaustive.  *United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991); *United States v. Myers*, 102 F.3d 227, 234 (6th Cir. 1996) ("Rule 404(b) is a rule of inclusion, not exclusion").  Evidence may be admitted under the rule for additional similar purposes.  *Bakke*, 942 F.2d at 981-82 (citations omitted).

Before Rule 404(b) evidence may be admitted,

> *the district court must*: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403.

*United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) (citing *United States v. Mack*, 258 F.3d 548, 533 (6th Cir. 2001)) (emphasis added).  Thus, the Court is required to find all three requirements satisfied before allowing the Government to

present the prior bad act evidence even though Defendant focuses only on the first requirement in his motion.

With respect to the first requirement, Rule 404(b) evidence is admissible "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, 685 (1988); *United States v. Hruby*, 19 F.4th 963, 966-67 (6th Cir. 2021). "[T]he trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Huddleston*, 485 U.S. at 690 (citation omitted). The Government proffers a sufficient basis for a jury to find that Defendant forged Suthar's signature on the USCIS letter. Most notably, Defendant had access to Suthar's signature, she claims she did not sign the letter, and the letter benefited only Defendant.

With respect to whether the prior acts are admissible for a permissible purpose, the Government focuses on identity, that is, to show that Defendant was the individual who forged the signatures on the two documents at issue in Counts 6 and 7 of the Superseding Indictment. As stated earlier, the Government argues that "the prior use of false signatures in support of self-serving interests establishes that

the Defendant has a *modus operandi* characteristic to his bad acts, which is evidence of his identity . . ..”

To be admissible, the crimes need not be identical in every detail, *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)), but there must be “sufficient distinctive similarity” to create a pattern or modus operandi, *id.* (citing *United States v. Woods*, 613 F.2d 629, 634 (6th Cir. 1980)).  “[T]he crimes must be so similar as to be a ‘signature’ of the defendant (a devise so unusual or distinctive as to be like a signature).”  *United States v. Hamilton*, 684 F.2d 380, 384-85 (6th Cir. 1982) (citations omitted); *United States v. Armstrong*, 436 F. App’x 501, 504 (6th Cir. 2011) (quoting *Hamilton*, 684 F.2d at 384) (“To qualify as *modus operandi* evidence, the similarity between the prior act and the charged offense must rise to the level of a ‘signature,’ or a ‘devise so unusual or distinctive as to be like a signature.’”)  “Much more is demanded than the mere repeated commission of crimes of the same class, such as serial murders, robberies, or rapes.”  Robert P. Mosteller, et al., 1 McCormick on Evid. § 190.3 (8th ed. 2020).  “[T]he *modus operandi* must be unique or highly distinctive.  Acts that are typical or predictable, commonplace or routine, cannot qualify.”  Christopher B. Mueller, et al., 1 Fed. Evid. § 4:36 (4th ed. 2023).

The alleged forgeries concerning the USCIS letter and the Shring documents are not sufficiently unique or highly distinctive to create a pattern or modus operandi for purposes of Rule 404(b).  The nature of the documents are distinct. They were purportedly signed by different individuals at different entities.  The documents were submitted to unrelated government agencies and for unrelated purposes.  The record does not reflect that the two acts were committed close in time.  Evidence that Defendant previously falsified someone's signature on a document to obtain a visa—an act that perhaps is not uncommon—only serves to show that he has a propensity for committing forgery.  *Cf. United States v. Fearns*, 501 F.2d 486, 491 (7th Cir. 1974) (finding evidence of possessing, endorsing, and cashing twenty-five to thirty other checks during the eight-month period immediately preceding the forgery offenses charged in the indictment where the forging and cashing of stolen checks were carried out by the same three people in the same way).  "[T]he law is clear that evidence of past criminal activity is inadmissible to show criminal propensity."  *United States v. Lattner*, 385 F.3d 947, 956 (6th Cir. 2004) (citing *United States v. Ismail*, 756 F.2d 1253, 1258-59 (6th Cir. 1985)).

For this reason, the Court concludes that evidence of the USCIS letter is not admissible under Rule 404(b).

**<u>Conclusion</u>**

In summary, the Court holds that the emails concerning Sai Pagudala are not excluded for lack of authentication under Rule 901.  However, evidence of Defendant's prior falsification of a signature on a letter submitted to USCIS is not admissible under Rule 404(b).

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude Unauthenticated Emails (ECF No. 72) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine concerning Rule 404(b) evidence (ECF No. 78) is **GRANTED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 5, 2023

17